## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**JERMAINE CRUMP**                                                        **PETITIONER**

**v.**                                                        **No. 3:18CV214-SA-RP**

**JOE ERRINGTON, ET AL.**                                                        **RESPONDENTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Jermaine Crump for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition; Mr. Crump has filed a Traverse, and the State has submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

### Procedural Posture

Jermaine Crump ( "Crump" or "Petitioner") is currently in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the Wilkinson County Correctional Facility in Woodville, Mississippi. On April 15, 2015, a jury convicted Mr. Crump of deliberate-design murder in the Circuit Court of Yalobusha County, Mississippi, Cause No. CR2013-7-SMY1. *See* State Court Record ("SCR"), Cause No. 2015-KA-01828-COA, Vol. 3, pp. 129-133 (ECF pagination).[1] The trial court sentenced Crump to life in the custody of MDOC. *Id*.

He then appealed his conviction and sentence to the Mississippi Supreme Court, raising the following three issues, as stated by appellate counsel:

I. Whether Crump was prejudiced by the erroneous exclusion of evidence favorable to his defenses?

II. Whether the trial court erred in allowing lay opinion evidence on the ultimate issue?

III. Whether the weight of evidence supports a murder conviction?

---

[1] References to the state court record from Crump's direct appeal of his conviction and sentence are designated as "SCR" with the appropriate volume and page number.

SCR, Cause No. 2015-KA-01828-COA, Brief of Appellant.

On July 7, 2016, Mr. Crump filed a *pro se* "Supplemental Brief of the Appellant," raising the following additional issues:

IV.     Whether Crump['s] Fifth Amendment rights under the Constitution were violated due to an involuntary confession brought about [by] coercion, asking of an attorney, harassment and non-waiver of his Miranda right[s]?

V.      Whether Crump's counsel at trial showed inadequate representation due to abuse of discovery, a contract and other violations under due process?

VI.     Whether prosecution team showed malicious prosecution through prosecutorial misconduct, not allowing a bond reduction, change of venue, conspiring, a contract, withholding and falsifying evidence?

SCR, Cause No. 2015-KA-01828-COA, Supplemental Brief of Appellant.  The State filed a brief in response to appointed counsel's brief and Crump's *pro se* supplemental brief, to which Crump filed another *pro se* supplemental brief in reply.  *See* SCR, Cause No. 2015-KA-01828-COA, Brief of Appellee; *see also* SCR, Cause No. 2015-KA-01828-COA, Reply Brief of Appellant.

On June 27, 2017, the Mississippi Court of Appeals affirmed Crump's conviction and sentence.  *See Crump v. State*, 237 So. 3d 808 (Miss. Ct. App. 2017), *reh'g denied*, October 31, 2017, *cert. denied*, March 1, 2018.  The Mississippi Court of Appeals first addressed the issues raised by appellate counsel, holding that harmless error resulted when the trial court improperly excluded testimony that did not qualify as hearsay.  *Crump v. State*, 237 So. 3d at 815-16.  The Court of Appeals further held that any prejudicial effect of Deputy Ferguson's opinion testimony was substantially mitigated by Crump's subsequent testimony that he acted irrationally when he killed Crystal, and as such, any error in allowing the testimony was also harmless.  *Id*. at 817-18.

As to Mr. Crump's claim regarding whether the weight of the evidence supported a murder conviction, the Mississippi Court of Appeals held that, when viewed in the light most favorable to the

jury's verdict, there was actual evidence that Crump acted with malice, which defeats his claim that the weight of evidence supports a manslaughter conviction based on heat of passion or imperfect self-defense. *Id*. at 819-20. The court found no merit to the issue because upholding the jury's verdict would not sanction an unconscionable injustice. *Id*.

Regarding the claims raised by Mr. Crump in his *pro se* supplemental brief, the Mississippi Court of Appeals held that the issue regarding Crump's confession is procedurally barred because he did not raise it at trial and give the circuit judge an opportunity to rule on it. *Id*. at 820. With respect to Mr. Crump's ineffective assistance of counsel claim, the court held that the record itself was inadequate to review the issue and did not find that the record affirmatively showed ineffectiveness of constitutional dimensions. *Id*. at 821. The Mississippi Court of Appeals held that Mr. Crump could raise the claims of ineffective assistance of counsel in the Mississippi Supreme Court in an application for leave to file a motion for post-conviction relief. *Id*. at 821. Finally, Mr. Crump's claims of alleged prosecutorial misconduct were deemed "so undeveloped that we are unable to review them." *Id*. at 821-22.

Meanwhile, Crump, *pro se*, filed a Petition for Writ of Mandamus in the Mississippi Court of Appeals on September 6, 2017, requesting the Court of Appeals to compel the Yalobusha County Circuit Court to rule on his July 17, 2017 "Motion to Compel the District Attorney to release Brady Material." Mr. Crump sought material to support his pending rehearing motion; however, the Mississippi Court of Appeals denied Crump's motion without prejudice on September 28, 2017, giving him the ability to seek relief through Miss. R. App. P ("MRAP") Rule 15, as the court had no jurisdiction to rule on a request for material intended for use in separate post-conviction proceedings. Mr. Crump's Motion for Rehearing was denied on October 31, 2017. On March 1, 2018, the

Mississippi Supreme Court denied Mr. Crump's Petition for Writ of Certiorari.  *See* Exhibit B[2] (Cause No. 2015-KA-01828-COA).

On March 19, 2018, Mr. Crump filed a *pro se* "Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief" ("Petition for Post-Conviction Relief") in the Mississippi Supreme Court, Cause No. 2018-M-00410, raising the following issues, repeated verbatim here:

**Ground One**:  The defendant never had the opportunity to confront witness[es] and to have each element of the offense proved beyond a reasonable doubt or view the physical evidence against him.  (Violates 6th Amendment Article 3, Sec. 25 and 5th Amendment Due Process Article 3, Sec. 14)

**Ground Two**:  The circuit Judge abused his discretion by denying the request for a continuance and denying a new trial.  (5th Amendment Article 3, Sec. 14 and 14th Amendment Article 3, Sec. 29)

**Ground Three**:  Trial counsel did not prepare adequately for trial and thus counsel's conduct constitute[s] ineffective assistance of counsel.  Counsel did not interview numerous potential witness[es], did not take pages of pretrial notes, did not visit the crime scene, he did not attempt to issue subpoena for appropriate witness[es].  The counsel did not object to important issues.  Never raise[d] the defendant's allegation of coercion and harassment [in violation of] of his 5th Amendment right.  And claim that authorities ignored his request to speak to a lawyer.  And request for new counsel was violated.  He never requested a copy of the actual tape to verify if the audio recording was his client at trial and etc. (6th Amendment was violate[d] Article 3, Sec. 6) (5th Amendment Article 3, Sec. 6) (5th Amendment Article 3, Sec. 14).

**Ground Four**:  That there are exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.  (5th Amendment Due Process Article 3, Sec. 14).

**Ground Five**:  The state eye witness "Asia" lacked credibility because she contradicted every other eye witness and discrepancies existed between her testimony and her affidavit.  (5th Amendment Article 3, Sec. 27 and Article 3, Sec. 14) (6th Amendment Article 3, Sec. 6).

**Ground Six**:  The Defendant was indicted under section 97-3-19 (1) (a) but sentence[d] under 97-3-21.  That the conviction and the sentence was imposed in

---

[2] The exhibits referenced in this memorandum opinion may be found attached to the State's Response to the instant petition.

violation of the Constitution of the U.S. and the Constitution of Miss. (5th Amendment Article 3, Sec. 27).

**Ground Seven**: Fights were inspired to make up an insanity defense. The defendant was sentence[d] to life in prison. Violates of the 8th Amendment cruel and unusual punishment article 3, Sec. 21 of the law of Mississippi.

**Ground Eight**: The state failure to adequately and constitutionally guarantee petitioner the protections of the Equal [Protection] Clause of the 14th Amendment.

SCR, Cause No. 2018-M-410, Misc. Case Folder #1, pp. 9-12 (ECF pagination).[3]

After reviewing Mr. Crump's Petition for Post-Conviction Relief, the Mississippi Supreme Court denied it on July 23, 2018, finding that his claims of ineffective assistance of counsel did not meet the standard set out in *Strickland v. Washington* and were thus without merit. Further, the court found that the remaining claims were barred, as they were either raised at trial and on direct appeal – or were capable of being raised in those proceedings. *See* Exhibit C (Cause No. 2018-M-00410).[4]

On November 19, 2018, Crump, *pro se*, filed a "Motion for Post-Conviction Relief" in the Mississippi Supreme Court, raising many of the same claims already raised and denied in his previous Petition for Post-Conviction Relief. Mr. Crump raised five issues in this second Petition:

**Ground One**: Crump was denied his right to effective assistance of trial and appellate counsel as guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution.

---

[3] Mr. Crump also submitted a memorandum within his *Motion for Post-Conviction Relief* that is omitted here in an effort not to cloud the issues. The memorandum is filed, along with post-conviction relief motions, as part of the SCR in Cause No. 2018-M-410.

[4] Mr. Crump also filed his *Plaintiff's Request for Production of Documents* with the Yalobusha County Circuit Court on April 3, 2018, requesting that the circuit court order the District Attorney and State of Mississippi to produce certain items he believed to be vital to his case. On August 21, 2018, the Yalobusha County Circuit Court denied the motion, as the requested documents and materials were not available in the record. Hence, any request for the Circuit Court to order evidence be produced that is not in the record, is improper. The court noted that Mr. Crump has not filed a proper motion under the Post-Conviction Collateral Relief Act.

**Ground Two**:  The trial court erred in excluding testimonial evidence favorable to his defense.

**Ground Three**:  The jury's verdict is against the overwhelming weight of the evidence.

**Ground Four**:  The trial judge and prosecutor conducted proceedings contrary to Petitioner's Fourteenth Amendment right to a fair trial.

**Ground Five**:  Petitioner was denied equal protection and the right to be tried by an impartial jury and was given an illegal sentence.

SCR, Cause No. 2018-M-410, Misc. Case Folder #3, pp. 6-13 (ECF pagination).

On December 13, 2018, the Mississippi Supreme Court held Crump's filing to be successive and that no exception to the procedural bar existed, and dismissed the petition.  Further, the court ruled that, despite the procedural bar, the petition itself was without merit.  The court dismissed Mr. Crump's Motion for Post-Conviction Relief, held the filing to be frivolous – and warned him that future frivolous filings could results in monetary sanctions or restrictions on the ability to file petitions for post-conviction relief.   *See* Exhibit D (Cause No. 2018-M-00410).

On September 27, 2018, Jermaine Crump signed the instant petition for a writ of *habeas corpus*, which was filed in this court on October 1, 2018, raising substantially the same claims as those raised in his second Petition for Post-Conviction Relief:

**Ground One**: Ineffective assistance of counsel:

    A.  Counsel's performance was prejudicial where counsel invoked an insanity defense against Petitioner's will and against the defenses that Petitioner rightfully had to utilize.

    B.  Counsel was ineffective where he prejudicially abandoned a Motion for Change of Venue in light of all the pre-trial publicity this created.

    C.  Counsel was ineffective where he injected highly prejudicial information before the jury.

    D.  Counsel was ineffective where he was the cause of Petitioner not making bond so that Petitioner could have done his own investigation and secured the presence of potentially favorable witnesses.

    E.   Counsel failed to investigate and interview and subpoena potential witnesses.

    F.   Counsel failed to challenge the statement which was unconstitutionally obtained.

**Ground Two**:  The trial court erred in excluding testimonial evidence favorable to the defense.

**Ground Three**: The jury's verdict is against the overwhelming weight of the evidence.

**Ground Four**: The trial judge and prosecutor conducted proceedings contrary to Petitioner's Fourteenth Amendment right to a fair trial.

*See* ECF doc. 1; *see also* ECF docs. 2 and 3.  In his amended petition, Mr. Crump raised a fifth

ground:

**Ground Five**: The prosecutor withheld evidence which was favorable to Petitioner's defense in violation of discovery rules and the law found in *Brady v. Maryland*.

*See* ECF doc. 6.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all grounds of the instant petition

on the merits and decided those issues against the petitioner; hence, these claims are barred from

*habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. §

2254(d), unless they meet one of its two exceptions:

(d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5ᵗʰ Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5ᵗʰ Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5ᵗʰ Cir. 2000); 28 U.S.C. § 2254(e)(1). As

discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection

(d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues

already decided on the merits.

### Facts

The Mississippi Court of Appeals summarized the facts of this case:

¶2. As of late 2012, Crump and his mother, Mary Crump, were the joint owners of their three-bedroom house near Coffeeville, Mississippi. Four other people were temporarily living with them: Crump's younger brother, Richard Crump Jr.; Richard's wife, Crystal Redmond Crump; and Richard and Crystal's two young children. Crump believed that Crystal had been intentionally damaging his clothes and computer. The record suggests that he retaliated by pouring water on Crystal's computer. Crump's problems with Crystal continued to escalate as he unsuccessfully tried to have her evicted or prosecuted multiple times.

¶3. It is undisputed that on November 2, 2012, Crump killed Crystal. Among other law enforcement officers, Chief Deputy Jerry Ferguson of the Yalobusha County Sheriff's Department was dispatched to Crump's house. Crystal's body was lying prone on the front porch. She had been shot numerous times, including three gunshot wounds to the head. Deputy Ferguson arrested Crump, who directed him to the pistol that he had hidden inside a "black makeup-type bag" that "was under a bunch of stuff inside [Mary's] closet." Crump also showed Deputy Ferguson a knife on the floor in the hall, and said it "was the knife [Crystal] had." Deputy Thomas West found two loaded pistol magazines in Crump's pocket, and two boxes of pistol ammunition in Crump's car.

¶4. Investigator Bryan Sullivant of the Mississippi Bureau of Investigations also responded to the scene. He noticed that Crystal had been wearing bright green latex gloves when she died. Investigator Sullivant later tested Crump's hands for gunshot residue, but Crump had washed his hands. However, Investigator Sullivant took samples from the knife in the hallway. Those samples later tested positive for gunshot residue. That evening, Crump declined to give a statement to Investigator Sullivant.

¶5. By the next morning, Crump had changed his mind. After detailing the problems he had been having with Crystal, Crump said that Crystal had been standing outside his bedroom immediately before he chased her and killed her. He said Crystal had been holding a knife, but he could not remember which of her hands it was in. He also could not remember what she said before he killed her. Investigator Sullivant asked Crump several times if there were anything strange about Crystal's hands, but Crump never mentioned the bright green latex gloves that Crystal had been wearing.

¶6. Crump admitted that he shot Crystal as she ran from him. He said that he shot at Crystal once as she was running through the hall, and again as she was near the front door. By then, he did not know whether Crystal still had a knife. When she opened the front door and fell onto the porch, he stood over her and shot her a few more times. Crump said that he had been aiming at Crystal's back, but his shots were hitting her in the head. Crump denied that he had picked up the knife in the hall, but he said that he kicked it after he killed Crystal.

¶7. During February 2013, Crump was indicted and charged with murder. His trial was substantially delayed by the question of his mental competency. Following a May 2013 motion by Crump's lawyer, Crump was evaluated by Dr. John Hutson, a clinical psychologist. In May 2014, Dr. Hutson recommended further evaluation at the Mississippi State Hospital at Whitfield.

¶8. After Crump's July 2014 initial evaluation at Whitfield, psychiatrist Dr. Reb McMichael and clinical and forensic psychologist Dr. Amanda Gugliano opined that Crump was not competent to proceed to trial. Crump was admitted to Whitfield for further evaluation. During September 2014, Dr. Gugliano again reported that Crump was not competent to proceed to trial. She explained that Crump appeared "to have a personality disorder with paranoid and schizotypal features." Crump's evaluation and treatment continued at Whitfield.

¶9. In January 2015, Dr. McMichael submitted a follow-up report that Crump was able to consult with his lawyer. Dr. McMichael further opined that Crump would have understood "the nature and quality of his alleged acts" and "he would have known [they were] . . . wrong." After conducting a competency hearing, the circuit court held that Crump was competent to stand trial.

¶10. Crump's three-day trial began on April 13, 2015. The prosecution called six witnesses during its case-in-chief. Asia Gunn testified that she was nine years old when Crump killed Crystal. Asia was in the home that day, because Crystal had been giving her a perm. While sitting in the living room, Asia saw Crump shooting at Crystal as he chased her down the hall, and again as he stood over her on the porch. Asia never saw Crystal with a knife, and she never saw a knife in the hallway.

¶11. Deputy Ferguson, Deputy West, and Investigator Sullivant all testified regarding their participation in the investigation. Dr. Erin Barnhart, a forensic pathologist, testified that she performed Crystal's autopsy, and Crystal had three gunshot wounds to the back of her head, one to the side of her torso, one in her right hip, and one in her right arm. Jacob Burchfield, an expert witness employed by the Mississippi Crime Laboratory, testified that gunshot residue was on the sample that Investigator Sullivant collected from the knife.

¶12. Crump participated significantly during his case. He vigorously disagreed with his lawyer's desire to present an insanity defense. Instead, Crump insisted that he had acted in self-defense.

¶13. Crump demanded that his lawyer call David Earl Hoop as a witness. Initially, Hoop did not know anything about the case. When Crump re-called him later, Hoop remembered that Crystal had taken her vehicle to his shop, and he found sugar in Crystal's gas tank. Hoop testified that Crystal was "real mad" when she left his shop. At Crump's insistence, his lawyer also called Crump's aunt, Ebonie Gunn, and his father, Richard Crump Sr., as witnesses. Neither of them knew anything about the shooting.

¶14. Crump's mother, Mary, testified about the living arrangements and Crump's problems with Crystal, but Mary was not at home when Crump killed Crystal. During a phone conversation on the day of the shooting, Crystal told Mary that she thought Crump had put sugar in her gas tank.[5] Mary asked Crystal to "let it go" because Crystal and Crump's brother planned to move out of the house soon. Mary also testified that Crump "got more intense" every time he unsuccessfully tried to get Crystal out of the house.

¶15. Against his lawyer's advice, Crump chose to testify. He said that on the day of the shooting, he heard Crystal talking on the phone with someone. "[F]rom that conversation, [he] felt like [his] life was in danger"; so he "got the [pistol] magazine and . . . prepared [him]self for any bad altercation or whatever the case may be."[6] According to Crump, Crystal said "[g]uess what" as she stood outside his door. Because of the prosecution's hearsay objection, Crump was not allowed to elaborate about what Crystal had said. Although Crump became frustrated by the circuit court's decision, he was able to testify that Crystal was "highly upset," angry, and "hitting stuff." He said that Crystal had a knife in her hand while she was standing outside his door, and he felt like his life was in danger. According to Crump, Crystal "was talking about what she was going to do."

¶16. Crump testified that Crystal ran from him, and he "ran behind her." Crump said that Crystal "was just getting in the den" when he "shot her in the leg[.]" He did not know whether Crystal still had the knife, but he did not see "[any]thing drop[.]" He testified that he was not thinking rationally, and he could not control his response because of his paranoid schizophrenia.[7] He added that he "couldn't stop shooting." However, he maintained that he acted in self-defense. While Crystal was lying on the porch, Crump "just stood over her . . .like a crazy man and just kept on shooting, and

---

[5] According to Mary, Crystal suspected that "two or three" people could have poured sugar in her gas tank. Crystal thought Crump was responsible for it "because of some more incidences that had occurred in the house."

[6] Crump bought the pistol approximately a week before he killed Crystal.

[7] During Mr. Crump's competency hearing, Dr. Gugliano opined that Crump did "not have schizophrenia . . . [or] any kind of major mental disorder or defect." Dr. McMichael said that Crump sometimes chose not to communicate rationally, and communication was difficult because of his "personality organization."

[he] was fixing to go and reload and shoot some more until [he] caught [him]self . . . ."
During cross-examination, Crump said that he did not know right from wrong, and he
could not stop himself. He added that he acted in the heat of the moment, but after he
started to think clearly, he realized that what he had done was "very wrong, very bad."

¶17. The prosecution called Investigator Sullivant during its rebuttal. During
Investigator Sullivant's rebuttal testimony, the prosecution introduced Crump's
recorded interview into evidence. As mentioned above, the jury found Crump guilty
of murder. The circuit court sentenced Crump to life in the custody of the Mississippi
Department of Corrections. Following his unsuccessful post-trial motions for a
judgment notwithstanding the verdict or a new trial, Crump appeals.

¶18. As a preliminary matter, we note that Crump's appellate counsel seeks to preserve
any issue regarding Crump's competence to stand trial. After the competency hearing,
and a few days before the trial, Crump's trial counsel produced a number of letters that
Crump had given to his father. The letters were addressed to the circuit judge.
Crump's lawyer unsuccessfully sought a continuance on the basis that the content of
the letters might change Dr. Gugliano's and Dr. McMichael's opinions that Crump was
competent. The record is silent regarding whether Dr. Gugliano or Dr. McMichael
ever reviewed the letters.

¶19. Crump's appellate counsel states that the record is inadequate for him to argue
that the circuit judge abused his discretion by denying the request for a continuance,
which could also be construed as a motion to reconsider Crump's competency.
However, counsel notes that Crump "participated extensively in his trial[,] . . . there
were numerous exchanges between Crump and the [circuit] judge [that] appear
consistent with the finding of competency[,]" and Crump was apparently able to
communicate with his prior attorney. Thus, while counsel does not concede that
Crump was competent, "[he] has determined that the record before the court does not
justify raising an issue about Crump's competency to stand trial." He requests "that
the competency issue remain viable to raise if necessary" through a motion for
postconviction relief. Crump would have to obtain the Mississippi Supreme Court's
leave to raise the issue in a motion for postconviction relief. *See* Miss. Code Ann. §
99-39-7 (Rev. 2015). As such, we decline to comment on the subject beyond stating
counsel's desire to preserve the issue.

*Crump*, 237 So. 3d at 813-15.

### Ground One: Ineffective Assistance of Counsel

In Ground One, Mr. Crump alleges that his trial counsel provided ineffective assistance in

defending against the criminal charges. ECF doc. 1. The court must address claims of ineffective

assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must

show that counsel's performance was deficient and that the deficiency resulted in prejudice to her

defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so

serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*,

466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time –

and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir.

1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To

prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been

different or that counsel's performance rendered the result of the proceeding fundamentally unfair or

unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995);

*Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir.

1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable.

The question is whether there is any reasonable argument that counsel satisfied *Strickland's*

deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131

S.Ct. 733 (2011).

> **Ground One (A):** **Counsel's performance was prejudicial where counsel invoked an insanity defense against Petitioner's will and against the defenses that Petitioner rightfully had to utilize.**

Mr. Crump argues that trial counsel's decision to invoke an insanity defense "against his will"

prejudiced his defense, and the insanity defense conflicted with the defenses the Mr. Crump wished to

raise. ECF doc. 3, pp. 9-11. As an initial matter, this ground for relief is squarely contradicted in the

record, as Mr. Crump equivocated regarding use of the insanity defense – seeming, at times,

vehemently opposed to that defense, then embracing it. Mr. Crump's counsel and the trial judge went

to great lengths to ensure that he presented every defense he wished to the jury. While meeting in chambers during the trial, counsel stated that Mr. Crump did *not* wish to raise the insanity defense and, instead, wished to argue self-defense:

> Your Honor, at this particular point, I only have one other witness that I will call, and that would be the Defendant at his request and over my objection and admonishment, but he insists that he wants to take the stand in his own defense.
>
> Also, I'd like to announce that I do have present Dr. John Hutson, the psychologist, but the Defendant does not want to use the defense of self-defense by reason of insanity.
>
> I had prepared jury instructions that were prepared to have testimony offered in that regard, and the Court has already pointed out that it is the Defendant's case, and I agree, based upon the Court rulings, the Court ruled under Uniform Circuit and County Court Rule 8.05, I think if I recall correctly off the top of my head, that he's entitled to make the decision. We have discussed several times, including several times since this trial has started, and he insists that he wants to use the defense of self-defense by a number of different methods, which I have set forth in the Motion for A Continuance.
>
> I don't remember them all off the top of my head. I think one was the Castle Doctrine, malicious prosecution, a few others, and *he does not want to use the insanity defense*.

SCR, Cause No. 2015-KA-01828-COA, Vol. 11, pp. 752-753 (emphasis added).

There were also several lengthy discussions outside the presence of the jury in which the trial court ensured that Mr. Crump understood that the case was his and that he was the final decisionmaker when it came to what witnesses to call, whether to testify, and what defenses to raise:

> **The Court**: [A]ll I want to make sure of is that you have the opportunity to discuss with your own lawyer the decisions that you have to make, and then you have to make your own decision as to whether or not you want to call witnesses, testify, a certain self-defense or an insanity defense or whatever or not to call any witnesses, not to testify. It's all – it's – the final decision is up to you. In other words, I want to make sure that when you are given the opportunity to make those decisions, that you're doing so knowingly and voluntarily and understanding, and that you are aware of the fact that the final decision is yours and yours alone. So your lawyer cannot do anything that you do not want him to do, you can follow his advice or not follow his advice. The decision is yours.

…

So do you understand the decisions that you've got to make?

| | |
|---|---|
| **[Crump]:** | Yes, sir. |
| **Court:** | Okay. Do have you decided what you want to do? |
| **[Crump]:** | We are going to put our defense on, witnesses and stuff, and I'll still decide if I want to testify after that. |
| **Court:** | Right. |
| **[Crump]:** | While we put our defense on. |
| **Court:** | And what defense is that? |
| **[Crump]:** | It's *self-defense*. |

SCR, Cause No. 2015-KA-01828-COA, Vol. 10, pp. 74-76 (emphasis added).

During direct examination of Crump's father, however, it became evident that Mr. Crump could not decide on his desired defense:

**[Crump]:** *My defense will be not guilty and not guilty by reason of insanity*.

*Id*. at 746 (emphasis added). It thus appears that Mr. Crump could not make up his mind whether to present an insanity defense.

In addition, the decision regarding which defense to employ is a matter of trial strategy, and "counsel has wide latitude in deciding how best to represent a client...." *Yarborough v. Gentry*, 540

- 16 -

U.S. 1, 5-6 (2003).[8]  When analyzing whether counsel's performance was deficient, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89.  Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011).

Mr. Crump raised these claims on appeal of his conviction and sentence, and the Mississippi Court of Appeals found that Crump's ineffective assistance of counsel claims were waived, holding:

> ¶42. Crump also argues that his trial counsel failed to present "letters and evidence of other defenses."  Crump does not explain what letters he references, or why his lawyer should have attempted to introduce them into evidence.  Nor does Crump explain what "other defenses" his trial counsel should have presented.  We note that the circuit judge repeatedly told Crump he was responsible for deciding what defense to present.  Crump's trial counsel sought to raise an insanity defense, but Crump vehemently disagreed.

*Crump*, 237 So. 3d at 820.

"Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins,* 985 F.2d 222, 228 (5th Cir. 1993).  As such, trial counsel's decision as to which defense to use was a matter of trial strategy and does not rise to the level of ineffective assistance of counsel.  For these reasons, the

---

[8] There are certain trial decisions about which the defendant has the final say (*e.g.* whether to plead guilty, waive a jury, testify in his own behalf, or take an appeal), but choosing whether the employ an insanity defense is not among them. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (listing strategic decisions a defendant must make); *Fla. v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 560, 160 L. Ed. 2d 565 (2004) (listing decisions defendant must make); *see also Moreno v. Estelle*, 717 F.2d 171, 177 (5th Cir. 1983) (counsel provided effective representation in rejecting insanity defense over defendant's objection).

Mississippi Supreme Court's denial of this claim of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. This ground for relief is without substantive merit.

> **Ground One (B):** **Counsel was ineffective where he prejudicially abandoned a Motion for Change of Venue in light of all the pre-trial publicity this created.**

In this claim of ineffective assistance of counsel, Mr. Crump argues that trial counsel was ineffective for abandoning a Motion for Change of Venue due to pretrial publicity. ECF doc. 3, p. 12. Counsel's decision to withdraw motion to change venue was trial strategy, for which the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (internal citations omitted). Mr. Crump's argument is without merit, as the Mississippi Court of Appeals explained:

> During a hearing on September 5, 2013, Crump's lawyer announced that Crump was waiving "any hearing" on his motion for change of venue. He clarified that he was withdrawing the motion for a change of venue "subject to examination of the jury pool[,] and he reserved the right to renew the motion if "something is revealed by voir dire" . . . . Crump never renewed the motion.

*Crump*, 237 So. 3d at 821. Mr. Crump also alleges that the jury pool was tainted. This claim is, however, without merit, as Crump and his counsel participated extensively, at Crump's insistence, in *voir dire* and jury selection. *Id.* As such, trial counsel's decision to withdraw the motion to change venue was trial strategy and does not rise to the level of ineffective assistance of counsel.

In any event, Mr. Crump cannot show that counsel's decisions in this case caused harm to his defense. The case against him was utterly overwhelming, as set forth in the facts section above – and discussed at length in the section regarding his claim that the evidence was insufficient to support the verdict. He was, in the words of the Mississippi Supreme Court "hopelessly guilty," meaning that the

- 18 -

evidence showed, without question, that he killed the victim. *Woodward v. State*, 635 So.2d 805 (Miss. 1993).

In addition, self-defense was a preposterous argument, given the fact that he shot his victim multiple times while she was fleeing, and more after she had had fallen to the ground. 237 So. 3d at 813-15. Indeed, Mr. Crump shot the victim *three times* in the head as she lay on the ground. *Id*. Further, his decision to testify – which he acknowledged in open court to be his, alone – was disastrous, as his testimony could lead a reasonable juror to conclude that he was angry with the victim after a long-running feud, chased her through the house shooting at her as she fled, and executed her. *Id*. Given the State's evidence – as well as Mr. Crump's own decision-making and testimony at trial – "guilty" was the only reasonable verdict in this case (unless counsel could have persuaded the jury that Crump was not guilty by reason of insanity).

For these reasons, Mr. Crump has shown neither that counsel's performance was deficient, nor that he suffered prejudice to his defense as a result. Therefore, the Mississippi Supreme Court's denial of this claim of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim for relief is without merit.

**Ground One (C):**     **Counsel was ineffective where he injected highly prejudicial information before the jury.**

In this claim of ineffective assistance of counsel, Mr. Crump argues that trial counsel's decision to file a "Motion to Allow Defendant to Wear Regular Clothes" prejudiced his defense. ECF doc. 3, p. 16. Mr. Crump does not, however, explain why or how this was highly prejudicial information. Hence, Mr. Crump's allegations in this claim for relief are conclusory in nature, and such claims do not merit federal *habeas corpus* relief. *See, e.g.*, *Collier*, 300 F.3d at 587 ("This Court has made clear that conclusory allegations of ineffective assistance of counsel

do not raise a constitutional issue in a federal *habeas* proceeding.") (citing *Miller*, 200 F.3d at 282). Thus, Mr. Crump has not shown that trial counsel provided deficient representation. Further, because there is no support for an argument for ineffective assistance of counsel as the result of a filing of a Motion to Allow Defendant to Wear Regular Clothes, this claim is without merit.

Mr. Crump also appears to argue that trial counsel was ineffective for informing the jury that he was sent to the state hospital for a mental evaluation. ECF doc. 3, p. 16. However, Mr. Crump contradicted this claim with his trial testimony:

**Mr. Crump:** My defense will be not guilty and not guilty by reason of insanity.

SCR, Cause No. 2015-KA-01828-COA, Vol. 10, p. 746. As visiting the state hospital for a mental evaluation is part of the process for raising an insanity defense, Mr. Crump has not shown how revealing that fact to the jury was improper. As discussed above, this allegation is both conclusory in nature and refuted by the record. Therefore, the Mississippi Supreme Court's denial of this claim of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim of ineffective assistance of counsel is without merit.

> **Ground One (D):** **Counsel was ineffective where he was the cause of Petitioner not making bond so that Petitioner could have done his own investigation and secured the presence of potentially favorable witnesses.**

In this claim of ineffective assistance of counsel, Mr. Crump argues that trial counsel caused him not to make bond, thus preventing him from completing his own investigation. ECF doc. 3, p. 18. Again, these allegations are conclusory in nature, as Mr. Crump has not explained how counsel's action caused him not to post bond – or what further investigation would have revealed. Conclusory allegations of ineffective assistance of counsel do not merit federal *habeas*

*corpus* relief. *See Collier, supra*. For this reason, Mr. Crump has not shown that trial counsel provided deficient representation.

In any event, this claim is meritless because Mr. Crump was capable of making bond. Indeed, counsel noted that Mr. Crump's family was "in a position to post a bond for him[,] but because of fear for his safety and the safety of others they've elected not to." *Crump*, 237 So. 3d at 821. Mr. Crump argues that, while trial counsel advised his father to save the $10,000 in bond money for a psychological evaluation, that psychologist neither attended trial nor appeared before the jury. ECF doc. 3, p. 19. The record reveals, however, that Mr. Crump, himself, chose not to call the psychologist as a witness:

| | |
|---|---|
| **Mr. Walker:** | Also, I'd like to announce that I do have present Dr. John Hutson, the psychologist, but the Defendant does not want to use the defense of self-defense by reason of insanity. . . . So I'm going to release Dr. Hutson from his commitment to testify in this case on that basis… |
| **Mr. Crump:** | That sums it up fairly. |
| **The Court:** | Does that sum it up fairly, I think you said? |
| **Mr. Crump:** | Yes, sir. |
| **Mr. Walker:** | …[T]he Defendant will be my last witness tomorrow. I will not be calling anyone else in my case in chief. |
| **The Court:** | Is that your decision, Mr. Crump? |
| **Mr. Crump:** | Yes, sir. |

*See* SCR, Cause No. 2015-KA-01828-COA, Vol. 11, pp. 752-55. Mr. Crump's allegations are both conclusory and refuted by the record. As such, the Mississippi Supreme Court's denial of this claim of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim of ineffective assistance of counsel is without merit.

**Ground One (E):**      **Counsel failed to investigate, interview, and subpoena potential witnesses.**

In this claim of ineffective assistance of counsel, Mr. Crump claims that a "proper investigation" would have yielded a justifiable homicide defense and that the "law failed to serve and protect him." ECF doc. 3, p. 22. To the extent he is arguing that his trial counsel was ineffective for failing to further investigate and subpoena witnesses, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). To prevail on this claim, Mr. Crump must provide specific factual support regarding what the exculpatory evidence or further investigation would have revealed. *Id*. He has not done so.

This ground for relief is without merit because Mr. Crump gave his trial counsel a list of witnesses three days before trial. SCR, Cause No. 2015-KA-01828-COA, Vol. 10, p. 676-77. Even with such a limited window in which to subpoena witnesses, counsel called the witnesses as Mr. Crump requested. *Id*. Mr. Crump and his counsel questioned the witnesses, but none gave testimony supporting a claim of self-defense. When the following witnesses were asked whether or not they were aware of any threats made by the victim against Crump, their responses were:

     **Mr. Walker**:      Do you know whether or not Crystal Redmond Crump made any threats or anything against the Defendant, Jermaine Crump?

     **Mr. Hoop**:      Not that I know of, sir.

*Id*. at 697.

     **Mr. Walker**:      Okay. Have you on any occasion heard Crystal Redmond Crump on any occasion?

     **Ms. Gunn**:      No.

*Id*. at 700.

- 22 -

**Mr. Walker**:    Do you know if the victim on any occasion ever threatened Jermaine or anything?

**Mrs. Crump**:    No.

*Id*. at 712.  Trial counsel investigated Mr. Crump's claims and, indeed, subpoenaed and examined these three witnesses at trial.  As such,  the Mississippi Supreme Court's denial of this claim of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established federal law.  This claim of ineffective assistance of counsel is without substantive merit.

**Ground One (F):        Counsel failed to challenge the statement which was unconstitutionally obtained.**

In this claim of ineffective assistance of counsel, Mr. Crump's argues that trial counsel failed to challenge an "unconstitutionally obtained" statement.  Mr. Crump argues that his statement to the police was "unconstitutionally obtained," as he was immediately placed under arrest and not provided a lawyer upon his request.  The record shows, however, that Mr. Crump was placed in handcuffs for the safety of officers and those in the house.  SCR, Cause No. 2015-KA-01828-COA, Vol. 9, p. 563. In addition, the record reveals that Mr. Crump never requested an attorney.  SCR, Cause No. 2015-KA-01828-COA, Vol. 10, pp. 625-27.  Further, this allegation is procedurally barred from federal *habeas corpus* review because, as the Mississippi Court of Appeals noted, Mr. Crump did not raise it at trial to provide the circuit judge an opportunity to rule on it.  *See Glasper v. State*, 914 So. 2d 708, 721 (Miss. 2005); *see also Crump*, 237 So. 3d at 820.  Mr. Crump also alleges that his trial counsel was ineffective in not requesting a copy of his statement to police.  Trial counsel was, however, given a transcript of the statement.  *Id*. at 821-22.  Hence, the Mississippi Supreme Court's denial of this claim of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established federal law.  This claim of ineffective assistance of counsel is without merit.

- 23 -

## Ground Two: The Trial Court Erred in Excluding
## Testimony Favorable to the Defense

In Ground Two, Mr. Crump alleges that the trial court erred in excluding testimony favorable to the defense. He argues that it was error for the court to exclude evidence of previous court proceedings where he tried to have the victim evicted from the home he co-owned with his mother. ECF doc. 3, pp. 31-33. During trial, Mr. Crump attempted to testify as to what Crystal said to him immediately prior to the shooting. The trial court sustained the prosecution's hearsay objection to Crump's testimony regarding the previous court proceedings. *Crump*, 237 So. 3d at 815. The Mississippi Court of Appeals' decision notes that there was no proffer of Crump's testimony regarding Crystal's alleged statement other than "[g]uess what[.]"; therefore, the issue is procedurally barred. *Id.*

In discussing what constitutes hearsay, the Mississippi Court of Appeals concluded:

¶25. "A party must do more than simply show some technical error has occurred before he will be entitled to a reversal on the exclusion or admission of evidence; there must be some showing of prejudice." *Pham v. State*, 716 So. 2d 1100, 1102 (Miss. 1998). As the State correctly notes, in *Gilbert v. State*, 934 So. 2d 330, 336 (Miss. Ct. App. 2006), this Court held that harmless error resulted when a trial court improperly excluded testimony that did not qualify as hearsay, but the witness still informed the jury that the victim was the initial aggressor. The same is true in this case. It was not necessary for Crump to quote Crystal in order for the jury to understand his claim that he killed her in self-defense. Accordingly, even if this issue were not procedurally barred, we would find that the circuit court's error was harmless.

*Id.* at 816.

Mr. Crump also argues that the trial court erred in allowing "lay opinion testimony" of the officers involved, as neither officer was tendered as an expert in crime scene reconstruction. Deputy Ferguson's testimony at issue was:

**By Mr. Jubera [prosecutor]**:

Q:     Based off of your personal knowledge what you observed on the scene, was there anything to indicate that Crystal Redmond Crump was an imminent threat to the Defendant?

- 24 -

A: No.

Q: Based off of your personal knowledge and what you observed at the scene, was there anything to indicate that Crystal Redmond Crump could have harmed Jermaine Crump?

A: No.

SCR, Vol. 9, p. 570-71. Agent Sullivant' gave similar testimony about other aspects of the crime:

**By Mr. Jubera:**

Q: Okay, based off of your training and experience, can you deduce anything regarding where the gun was initially fired?

A: In the hallway.

Q: Inside the bedroom or outside the bedroom?

A: Outside the bedroom in the hallway.

Q: Does that conform to what Jermaine told you?

A: Yes, sir.

…

Q: Based off of your training, experience, personal observation, and the Defendant's statements, is there anything to indicate that Crystal Redmond Crump was assaulting Jermaine?

A: No.

Q: Based off of your personal observation, physical evidence, the Defendant's statement, investigation, training, and experience, is there anything to indicate that Crystal Redmond Crump was an imminent threat to put her on the porch at that time to Jermaine Crump?

A: No.

Q: Based off of those same things, personal observation, Defendant's statement, physical evidence, training and experience, as Crystal was running away, was she an imminent threat to Jermaine Crump?

A: No.

SCR, Vol. 10, p. 619-21.

- 25 -

As the Mississippi Court of Appeals found, Mr. Crump did not object to Agent Sullivant's testimony; as such, he was procedurally barred from raising the issue for the first time on appeal. *Crump*, 237 So. 3d at 817. Hence, this testimony is barred from federal *habeas corpus* review, absent a showing of prejudice or fundamental miscarriage of justice.

The Mississippi Court of Appeals found that Deputy Ferguson did not testify as an expert witness, but as a lay witness; as such, "…he could express any opinion that was rationally based on his perception, but only if it helped the jury understand his testimony or determine a fact in issue. *See* M.R.E. 701(a)-(b)." *Id*. The Mississippi Court of Appeals concluded, however, that the trial court erred when allowing Deputy Ferguson to offer opinion testimony in answering a question calling for a response relying on his experience as a law enforcement officer. *Id*. at 818. The court discussed the issue further:

> ¶33. The Mississippi Supreme Court has recently reiterated that "because the public hold police officers in great trust, the potential harm to the objecting party requires reversal where a police officer gives expert testimony without first being qualified as such." *Kirk v. State*, 160 So. 3d 685, 693 (¶19) (Miss. 2015) (quoting *Roberts v. Grafe Auto Co*., 701 So. 2d 1093, 1099 (Miss. 1997)). But in *Kirk*, the Supreme Court held that the issue had been waived due to the lack of an objection and at least in part because "defense counsel interrogated [the deputy] not only in an effort to call into question [the deputy's] expertise regarding strangulation, but also to adduce one of the defense's theories of the case, that the marks on [the victim's] neck had been self-inflicted." *Id*. at 694 (¶21). As discussed above, Crump's lawyer cross-examined Deputy Ferguson and asked him if his opinion would be different if immediately before Crump shot Crystal, she had been threatening Crump with the knife while she was standing outside his door.

> ¶34. More significantly, in *Kirk*, the Supreme Court did not reverse its prior decisions holding that harmless error resulted where a lay witness offered improper testimony that was cumulative because an expert witness testified to the same effect. *See Le v. State*, 913 So. 2d 913, 937 (¶80) (Miss. 2005) (overruled on other grounds by *Bonds v. State*, 138 So. 3d 914, 919 (¶13) (Miss. 2014)); *Walker v. State*, 740 So. 2d 873, 882-83 (¶¶34-35) (Miss. 1999) (disagreed with on other grounds by *Dilworth v. State*, 909 So. 2d 731, 735 n.4 (Miss. 2005)); *Whittington v. State*, 523 So. 2d 966, 974-75 (Miss. 1988). As mentioned above, Crump objected to Deputy Ferguson's testimony that Crystal was not a threat to Crump while she was lying prone on the porch, and the

knife was approximately thirty feet away. Dr. Barnhart testified that aside from a "right[-]to[-]left" gunshot wound to Crystal's torso, all of Crystal's other five gunshot wounds traveled from "back to front." She also testified that none of Crystal's wounds traveled from front to back, and that Crystal would not have been a threat to Crump after the first of three gunshot wounds to the back of the head. What is more, any prejudicial effect of Deputy Ferguson's opinion testimony was substantially mitigated by Crump's subsequent testimony that he acted irrationally when he killed Crystal. For the foregoing reasons, we find that any error in allowing the testimony at issue is harmless.

*Id*. at 818.

This court may not review a challenge to the state court's ruling on the admissibility of evidence under state law, as rulings of state courts on evidentiary matters are solely issues of state law. "A state court's evidentiary rulings present cognizable *habeas* claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994). In other words, a state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." *Engle v. Isaac,* 456 U.S. 107, 118 (1981). In *Engle,* the Supreme Court held:

> [A] "mere error of state law" is not a denial of due process. If the contrary were true, then "every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question."

*Id.* at 121 n.21 (citations omitted). "[I]n reviewing state court evidentiary rulings, the federal *habeas* court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999). The "erroneous admission of prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson,* 194 F.3d at 656. This court finds, as did the state appellate court, that the evidence was cumulative, and the

error was, therefore, harmless.  For this reason, Jermaine Crump is not entitled to federal *habeas corpus* relief on his claim in Ground Two of the instant petition.

### Ground Three:  The Evidence Was Insufficient to Support the Verdict[9]

Mr. Crump also argues that there is insufficient evidence to support a murder conviction.  In his direct appeal, Mr. Crump argued that "[t]he only conviction supported by the evidence in this case is one for manslaughter, either in the heat of passion . . . or for what is referred to as imperfect self-defense." *Id*. at 818.  He further argued that a witness for the State was coached and that there is evidence to support his contention of attempts to have the victim evicted from the home he co-owned with his mother. *Id* at 819-20.

A challenge to the sufficiency of the evidence can support a claim for *habeas corpus* relief only if the evidence, when viewed in the light most favorable to the State is such that no reasonable fact finder of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985).  This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).  The *Jackson* standard allows the trier of fact to find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d

---

[9] Mr. Crump also challenges the weight of the evidence; however, that is not a valid claim for federal *habeas corpus* relief.  *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123 (1986) ("A federal *habeas* court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence…"); *United States v. Garrido*, 467 F.3d 971, 984 (6th Cir. 2006) (a court during *habeas corpus* review may not weigh the evidence or consider the credibility of witnesses); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995) (same).

465, 468 (5th Cir. 1992). As stated above, "where the state appellate court has conducted a thorough review of the evidence . . . . its determination is entitled to great deference." *Callins*, 998 F.2d at 276.

In challenging the sufficiency of the evidence, Mr. Crump argues that there was an argument with the victim "moments before" he fired on her – and that the state's witness was coached. ECF doc. 3, pp. 34-35. He also argues that there is evidence that the victim intended to inflict great bodily harm on him – and that the jury was not instructed on the Castle Doctrine. *Id*.

The Mississippi Court of Appeals discussed the evidence introduced against Crump at trial, as well as Crump's own testimony. On direct appeal, the Mississippi Court of Appeals extensively discussed Crump's challenge to the weight and sufficiency of the evidence regarding his allegation that he acted in self-defense and that the victim was the aggressor. *Crump*, 237 So. 3d at 818-20. The court determined that the jury "certainly could have found that Crystal's anger due to the vandalism of her car is not sufficient provocation that will reduce murder to heat-of-passion manslaughter." *Id*. at 819.

There was conflicting testimony regarding whether the victim had a knife; however, Mr. Crump did not testify that she advanced on him with a weapon – or even threatened him. *Id*. The court of appeals found that:

> …the jury could have held that once Crystal turned and fled from Crump, she was certainly not a threat. Crump testified that he did not know whether Crystal had a knife while she was running from him. After Crystal fell on the porch with one or more gunshot wounds, Crump stood over her and continued to shoot her."

*Id* at 819-20. The record shows that none of the victim's wounds traveled from front to back. The state court concluded that, "[v]iewed in the light most favorable to the jury's verdict, there was evidence Crump acted with malice." *Id*. at 820. It is the province of the jury to determine the facts in a criminal case – and apply to those facts to the law given by the court through jury

instructions. *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236, 108 L. Ed. 2d 369 (U.S. 1990) (plurality opinion) (Blackmum, J., concurring). There was ample evidence presented by the State to support the jury's finding that Mr. Crump was guilty of deliberate design murder. Viewing the evidence in the light most favorable to the State, the evidence supports the jury's finding of the essential elements of deliberate design murder beyond a reasonable doubt. The Mississippi Court of Appeals held that "[t]his conclusion defeats Crump's claim that the weight of the evidence supports a manslaughter conviction based on either heat of passion or imperfect self-defense." *Id*. For these reasons, Mr. Crump has presented nothing in his petition to overcome the deference afforded to the findings made by the state appellate court. *See* 28 U.S.C. § 2254(e)(1).

The Mississippi Court of Appeals is presumed to have determine the facts reasonably, and it is Mr. Crump's burden to prove otherwise with clear and convincing evidence. *See Miller*, supra; *see also* 28 U.S.C. § 2254(e)(1). The Mississippi Court of Appeals did not incorrectly or unreasonably apply clearly established federal law, and Mr. Crump has not shown otherwise. *See Williams v. Taylor, supra*. As such, Jermaine Crump is not entitled to federal *habeas corpus* relief on his claims in Ground Three regarding the sufficiency of the evidence to support his conviction.

### Ground Four: The Trial Judge and Prosecutor Violated Crump's Right to a Fair Trial

In Ground Four, Mr. Crump argues that the trial judge and prosecutor conducted proceedings contrary to his Fourteenth Amendment right to a fair trial. ECF doc. 3, p. 36. Mr. Crump claims there was a contract between his attorney and the District Attorney, but he offers no proof of such an agreement. *Id*. He argues that an insanity defense was used against his wishes, but a few paragraphs later, he argues that the insanity defense was abandoned, and the court did not instruct the jury on it.

*Id*. at 37.  As stated in Ground One above, the trial court discussed the defenses used – and repeatedly

told Mr. Crump that he could make these decisions regarding his case:

> [A]ll I want to make sure of is that you have the opportunity to discuss with your
> lawyer the decisions that you have to make, and then you have to make your own
> decision as to whether or not you want to call witnesses, testify, a certain self-defense
> or an insanity defense or whatever or not to call any witnesses, not to testify.  It's all—
> it's—the final decision is up to you.  In other words, I want to make sure that when
> you are given the opportunity to make those decisions, that you're doing so knowingly
> and voluntarily and understanding, and that you are aware of the fact that the final
> decision is yours and yours alone.  So your lawyer cannot do anything that you do not
> want him to do, you can follow his advice or not follow his advice.  The decision is
> yours.

SCR, Cause No. 2015-KA-01828-COA, Vol. 10, pp. 673-674.  While Crump expressed his desire to

call certain witnesses, the judge again replied:

> Okay.  Well, you discuss that with your lawyer, and Mr. Crump, like I said, this is the
> point in time where you and your lawyer have to talk about it and make that decision
> about whether or not you're pursuing a self-defense defense or an insanity defense,
> and depending on what defense that is, then that will naturally determine who your
> witnesses are.
>
> So the record, again I just want to make sure it's crystal clear that the decisions are
> ultimately yours so that later on you do not come back to me and say:  "Well, I didn't
> want to do that, my lawyer made me do that."  That's not going to happen here.  I
> don't let it happen in any case, not just your case.
>
> So you understand the decisions that you've got to make?

*Id*. at 674.  Mr. Crump responded, "Yes, sir."  *Id*.  The record clearly shows that trial counsel handled

his defense exactly as Mr. Crump instructed, even when he could not decide on the desired defense.

The petitioner's argument is thus without substantive merit.  As such, Mr. Crump is not entitled to

*habeas corpus* relief on his claim in Ground Four of the instant Petition.

### Ground Five:  The Prosecutor Withheld
### Evidence Favorable to the Defense

In Ground Five, Mr. Crump argues that the prosecutor withheld evidence favorable to the

defense in violation of discovery rules.  Mr. Crump merely states, "Newly discovered evidence would

show on Crystal's death on November 2, 2012, that she told David Earl Hoop that she was going to kill Petitioner because she believed he was the one that planted sugar in her gas tank." ECF doc. 6, p. 3. Mr. Crump offers no evidence to support this claim.

In any event, Mr. Hoop testified that he was not aware of any threats Crystal made against the Mr. Crump. However, Mr. Hoop remembered more about his encounter with the victim – and was recalled to testify, stating:

> **Mr. Walker**: Okay. Would you tell us what you remember her doing when she came to your shop?
>
> **Mr. Hoop**: She brought the vehicle to my shop for me to check it out, and we found that there was sugar in the gas tank, and she did get on a cell phone and was arguing with somebody, *who I don't know*, and she left there real mad; and somebody did come back to my shop later on, you know, after she left, and told me that she was – you know, had been shot.

SCR, Cause No. 2015-KA-01828-COA, Vol. 11, p. 763 (emphasis added). For this reason, Mr. Crump is not entitled to federal *habeas corpus* relief on his claim in Ground Five of the instant petition.

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 1st day of March, 2022.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE

- 32 -